Fecteau, J.
This matter is before the court on a motion for summary judgment by the defendants,’ Paul DiPaolo, William Coalter, Larry Dubois, as it relates to these defendants individually,[1] and the Commonwealth of Massachusetts (the "Commonwealth”). The plaintiff, Albert Gendron, in his opposition to defendants’ motion has agreed to dismiss those counts in his complaint against Paul DiPaolo, William Coalter, and Larry Dubois (Counts V-V1I) such that only plaintiffs Count VIII related to the alleged negligence of the Commonwealth is placed in issue by the present motion. Plaintiffs claim has its genesis in a November 4, 1992 incident during which the plaintiff was beaten by a correctional officer while being held at the correctional facility at M.C.I. Concord. In his complaint, the plaintiff has alleged that the Commonwealth’s negligent hiring and supervision of its employees was the proximate cause of his injuries and as such it is liable under the Commonwealth’s Tort Claims Act, G.L.c. 258.
The Commonwealth presently asserts that the acts complained of by the plaintiff are in fact intentional torts and as such it, as a public employer, is not liable for its employees’ actions pursuant to G.L.c. 258, Sec. 10(c). Alternatively, the Commonwealth asserts that G.L.c. 258, Sec. 10(j) also precludes any claim the plaintiff may bring for the alleged failure of the Commonwealth to train, supervise, regulate, control, or correct its employees. The plaintiff, in his opposition, asserts that his claim is not one for intentional tort but instead encompasses the Commonwealth’s alleged failures in hiring and supervising its employees and as such is not barred by the G.L.c. 258, Sec. 10(c). The plaintiff also contends that his claims are not excluded by G.L.c. 258, Sec. 10(j) because: 1) the perpetrators in this case were acting on behalf of the Commonwealth; 2) the Commonwealth’s employees’ intervention put the plaintiff in a worse condition than he had been previously such that G.L.c. 258 10(j)(2) applies.[2] For the following reasons, the Commonwealth’s motion for summary judgment is Denied, as to Count VIII and Allowed as to Counts V-VII.
FACTUAL BACKGROUND
On November 4, 1992, the plaintiff was in the custody of the Commonwealth and was being held at M.C.I. Concord. Julio Semidi (“Semidi”), a named defendant in this action, was a Correctional Officer assigned to the plaintiffs cell-block area.
Prior to Semidi being employed by the Commonwealth a “Report of Investigation” was compiled for the purposes of reviewing his qualifications. In said report, Semidi’s immediate prior employer, “Sem Tec” company in Worcester, MA indicated that Semidi “needed constant supervision.” It was also reported that Semidi needed to be constantly reminded about “safety requirements in the immediate area of his responsibility.” Another prior employer of Semidi, Valve Components in Worcester, MA, stated that Semidi “had a problem with accepting authority,” and that during an exchange between Semidi and his foreman concerning Semidi’s breaking of work materials, Semidi exclaimed “Hey, you’re not my father,” and thereafter never returned to work. The report, however, also contained statements from several earlier employers who were happy with Semidi’s job performance, so much so that they would have been willing to rehire him. Semidi’s personnel file also indicated that in the weeks just prior to his hiring, Semidi had a restraining order taken out against him by his wife, and said order remained in effect after a court hearing and was extended through the period Semidi was being considered for hire by the Commonwealth.
On the day in question, the plaintiff and Semidi had a verbal confrontation that led to Semidi ordering the plaintiff out of his cell. The plaintiff was ordered to “assume the position,” which he did, outside his cell with his hands up against the wall and his legs spread. Semidi then called down the cell block hall to his co-worker, Correctional Officer Michael Coren (“Coren”) to bring a set of handcuffs. Coren came down the hall and handed Semidi the handcuffs; Coren asked if Semidi needed any assistance and Semidi stated “no.” Coren then went back to his office.[3]
Semidi then cuffed the plaintiff s hands behind his back. While Semidi had the plaintiff cuffed and against the wall Semidi struck the plaintiff in the genitals from behind, then pushed the plaintiffs head against the *88 concrete wall, opening a wound from which the plaintiff began to bleed.
After the incident, the plaintiff was taken away by other correctional officers to a unit known as “Department 9" in MCI-Concord and put in isolation. The plaintiff was still bleeding from his wound when he arrived. He was strip-searched and then seen by a physician’s assistant, Nat Stillman. Six stitches were required to close the roughly two-inch wound above plaintiffs eye. The plaintiff was then interviewed by the Commonwealth’s Perimeter Security Investigator Sergeant McCann (“McCann"). After two interviews with McCann, the plaintiff was transferred to M.C.I. Shirley and placed in the isolated Secure Management Unit (“S.M.U.”) in that facility.
In the first few days he was in the Shirley S.M.U., the plaintiff requested antiseptic wipes for his wound and asked that his dressings be changed. The plaintiff was never given the wipes and never had his dressings changed. Soon thereafter, the plaintiff began to feel a tightness in the area of his stitches. Upon inspection the plaintiff found that the skin was growing over the stitches, and he several times asked for the stitches to be removed. The plaintiffs requests again went unanswered. Finally, the plaintiff was forced to remove the stitches himself. A few days later the plaintiffs wound became infected and the plaintiffs eye swelled shut. Finally, on November 17, 1992, the plaintiff was finally seen in the health services unit, where he received medical treatment.
DISCUSSION
Summary judgment shall be granted where there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, therefore, she is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). If the moving party establishes the absence of a triable issue, in order to defeat a motion for summary judgment, the opposing party must respond and allege facts which would establish the existence of disputed material facts. Id.
A judge, when ruling on a motion for summary judgment must consider “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in determining whether summary judgment is appropriate.” Flesner v. Technical Communications Corporation et al., 410 Mass. 805, 807 (1991). Where no genuine issue of material fact exists, “the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Id. citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
The only issue before this court at the present time is whether or not the plaintiffs claims against the Commonwealth are barred by the exclusions to G.L.c. 258 as stated in section 10 of said statute.
G.L.c. 258, Sec. 2 states in relevant part that a “(p)ublic employer shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances ...” Plaintiff in Count VIII of his complaint alleges that the Commonwealth: 1) knew or reasonably should have known of the violent and/or otherwise dangerous propensities of Semidi; 2) negligently failed to provide adequate medical treatment to the plaintiff at MCI-Concord and/or MCI-Shirley; 3) negligently placed and continued to confine the plaintiff in an isolation cell at MCI-Concord and/or MCI-Shirley.
The Commonwealth asserts in its motion that the plaintiffs claims are barred under both sections 10(c) and 10(j) of the Commonwealth’s Tort Claims Act. G.L.c. 258, Sec. 10(c) bars a plaintiffs claims against a public employer where said claims arise “out of an intentional tort, including assault and battery . . .” G.L.c. 258, sec 10(j) bars a plaintiffs claims where they are based “on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer ...” Sec. 10(j), however is not applicable where plaintiffs claims are “based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention ...”
“The scope of the authority of this court to interpret and apply statutes is limited by its constitutional role as [a] judicial, rather than (a] legislative body.” Pielech v. Massasoit Greyhound, Inc., 423 Mass 534, 538 (1996). Courts must construe statutes as they are written. See id., citing Brennan v. Election Comm’rs of Boston, 310 Mass 784, 789 (1942). “Statutory Language is the principal source of insight into [Legislative purpose.” Id., citing Hoffman v. Howmedia, Inc., 373 Mass. 32, 37 (1977), and Commonwealth v. Lightfoot, 391 Mass. 718, 720 (1984). If the language of the statute is “ ‘fairly susceptible [of] construction that would lead to a logical and sensible result’ [the court] will construe it so ‘as to make [it an] effectual piece of legislation in harmony with common sense and sound reason.’ ” Commonwealth v. Williams, 427 Mass 59, 62 (1998) (citation omitted).
Initially, it must be determined if plaintiff s Count VIII is based on the alleged intentional conduct of *89 Semidi or the alleged negligence of the Commonwealth. The Commonwealth contends that, in this case, it falls within the exemption from liability, as stated in section 10(c), for “any claim arising out of an intentional tort, including assault and battery . . .” since plaintiffs claim arises out of the intentional torts allegedly committed by Semidi. G.L.c. 258, Sec. 10(c); cf Doe v. Driscoll, 404 Mass 634, 653 (1989). The wording of plaintiffs complaint alleging negligence, the Commonwealth asserts, should not obscure the true nature of the claim, where in actuality plaintiff s claim arises out of an assault and battery. Cf Doe v. Blandford, 402 Mass. 831, 835 (1988).
In Doe v. Blandford, 402 Mass. 831, 835, a former student of the defendant school who had been abused by a guidance counselor employed by the defendant brought a complaint against the school district, among others, under the Commonwealth’s Tort Claims Act. In her complaint, the plaintiff alleged, that the defendants “were negligent in hiring, failing to supervise, and failing to fire” her abuser. Id. at 832. In its decision, the court found that the intentional tort exception should be interpreted narrowly and agreed with those courts which have “allowed actions to be brought against the government when a claim independent of the intentional tort is alleged.” Id. at 837. More recently, the Supreme Judicial Court reaffirmed its holding in Doe v. Blandford, stating that “where the supervisory officials allegedly had or should have had knowledge of a public employee’s assaultive behavior, it is the supervisors’ conduct, rather than the employee’s intentional conduct, that is the true focus of the case.” Doe v. Driscoll, 404 Mass 634, 653 (1989) citing Doe v. Blandford, 402 Mass. 831 (1988).
In the present matter, much like the circumstances presented in Doe v. Blandford, plaintiff is essentially alleging that the Commonwealth negligently hired, trained and supervised its employees. In his complaint, plaintiff specifically states that the Commonwealth should be liable for his injuries because it “knew or reasonable should have known of the violent and/or otherwise dangerous propensities of . . . Semidi.” Nothing in the materials presented on summary judgment indicate that the plaintiff is attempting to recover against the Commonwealth for any of the alleged intentional acts of Semidi. Therefore, since plaintiffs claim against the Commonwealth is independent of any alleged intentional torts, the immunity provided for by G.L.c. 258, Sec. 10(c) does not bar plaintiffs claims in this case.
Simply because G.L.c. 258, Sec. 10(c) does not act to bar plaintiffs claim, one may not conclude that plaintiff s claim remains viable. Even if one immunity provided by G.L.c. 258, Sec. 10 contains an exception that would permit a claim to be brought, that claim [may still be] barred if any of the other immunities apply. See Brum v. Town of Dartmouth, 428 Mass 684 (1999). Before concluding then, we must determine whether the immunity provided for by G.L.c. 258, Sec. 10(j) applies in this case so as to bar plaintiffs claim against the Commonwealth.
The Supreme Judicial Court has labored to make sense of the “interpretive- quagmire” of §10(j). Brum v. Town of Dartmouth, 428 Mass. 684, 692 (1999). Having determined that, under §10(j), “there is immunity in respect to all consequences except where ‘the condition or situation’ was ‘originally caused by the public employer,’ ” id., the Court then struggled to give a reading to the phrase, “originally caused by the public employer,” that would avoid swallowing up the immunity intended in §10(j) and refrain from relegating the statutory language to surplusage. Id. at 692-96. The Court was concerned that, “if a neglect of a duty can be taken to ‘originally cause[ ]’ ... a ‘situation,’ then the opening words of §10(j), immunizing *act[s] or failures] to act to prevent,’ which we take to announce the provision’s principal purpose, would virtually be read out of the provision.” Id. at 692-93. The Court finally, and firmly, gave life to the legislative effort to provide immunity by concluding that §10(j) excluded the defendants’ liability, for their failure to remedy a lack of security on school grounds and thus to prevent plaintiffs demise, where the injury was not “originally caused by the public employer.” Id. at 696.
If plaintiff were only claiming that the Commonwealth’s “failure to prevent the assailant from being in a position to attack” him led to his injuries, G.L.c. 258, Sec. 10(j) would apply to bar plaintiffs claim. Brum v. Town of Dartmouth. 428 Mass. 684, 695 (1999). In this case, however, plaintiffhas alleged that the Commonwealth “knew or reasonably should have known of the violent and/or otherwise dangerous propensities" of Semidi. The plaintiff has also introduced evidence suggesting that the Commonwealth knew before hiring Semidi to work as a correctional officer that he might have had a propensity for violence against others.
Those few courts that have dealt with issues similar to that presented in this case have differentiated between those actions by a public employer which may be characterized merely as a failure to prevent harm and those other actions which may be termed affirmative acts. See id.
A public employer only has immunity under G.L.c. 258, Sec. 10(j) in those instances where it negligently failed to prevent harm to another, not where its own negligent affirmative actions caused the harm. See id. In Bonnie W. v. Commonwealth, 419 Mass. 122, 125 (1994), the plaintiff was assaulted in her trailer park home by a parolee whom had been kept on as a maintenance worker by the trailer park after his parole officer had concealed the nature of his past convictions in a recommendation. In spite of the defendant Commonwealth’s claims *90 that it had immunity under G.L.c. 258, Sec. 10(j),the court found that the parole officer’s negligent and misleading recommendation could form the basis of plaintiff sciaimagainstthedefendantCommonwealth under G.L.c. 258.[4]
More recently, in Serrel v. Franklin County, 47 Mass.App.Ct. 400, the Appeals Court saw fit to overturn a decision of this court to allow defendant’s motion for summary judgment where it was argued that G.L.c. 258, Sec. 10(j) applied to the actions of two correctional officers. In Serrel, the plaintiff, while visiting an inmate at the Franklin County House of Correction, was injured by correctional officers who were attempting to subdue another inmate. In its decision, the Appeals Court found that since the plaintiff was injured by the affirmative actions of the intervening correctional officers, rather that the actions of a non-employee third party, the plaintiffs claim was not barred by G.L.c. 258, Sec. 10(j).
In this case, plaintiff claims that the Commonwealth, by hiring Semidi to be a correctional officer knowing that he might have a propensity for violence, acted both affirmatively and negligently. While it is admittedly a close call, the facts and allegations in this case are substantially closer to those present in Bonnie W. v. Commonwealth, than to those cases in which the immunity of G.L.c. 258, Section 10(j) was found to apply.[5] Therefore, since plaintiffs claim against the Commonwealth is based on its affirmative acts rather than its failure to prevent plaintiffs injuries, the immunity provided for by G.L.c. 258, Sec. 10(j) does not bar plaintiffs claims in this case.[6]
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion of the defendant Commonwealth of Massachusetts for summary judgment as to Count VIII is DENIED. To the extent that the motion seeks summary judgment on Counts V-VII, on behalf of the defendants Paul DiPaolo, William Coalter and Larry DuBois, it is ALLOWED.

 Another individual defendant, Julio Semidi, is not a subject of the motions herein. He has, in fact, since died, and his personal representative has been substituted as named-defendant. It is he against whom the plaintiff makes allegations of intentional conduct. Such allegations comprise counts I-IV of the plaintiffs amended complaint and they remain unaffected by the actions herein.

 Plaintiffs assertion that G.L.c. 258, Sec. 10(h) allows him to bring his claim against the Commonwealth is misguided and misconstrues the statute beyond any sensible reading. The exceptions to the general purpose of the Commonwealth Tort Claims Act as stated in Sec. 10 of said statute outline those situations where a public employer may still have immunity from claims brought by plaintiffs who have been injured due to the negligence of its employees. Since in this case the Commonwealth has not cited Sec. 10(h) as one of those exceptions under which it believes it has immunity, the plaintiff can not assert that it has some sort of right to bring a claim under said section.

 There is some evidence on the record that there may have been a policy in place at MCI-Concord dealing with the use of handcuffs in situations similar to the case at bar. In his deposition Correctional Officer Michael Coren when asked if there was a policy in place as to the use of handcuffs stated the following: [Depending on the circumstances that are, you’re facing, and if it’s life threatening, you have to cuff the inmate, you cuff him, but if it’s not life threatening, you get assistance.

 As stated by the court in Brum v. Town of Dartmouth, 428 Mass. 684, 695 (1999), in its discussion of Bonnie W. v. Commonwealth, 419 Mass. 122, 125 (1994), “(t]he officer's failure to supervise, barred by section 10(j), can be characterized only as a failure to prevent the assailant from being in a position to attack the plaintiff, whereas the negligent recommendation was an affirmative act on the part of the public officer that created a situation in which a sexual predator held a job giving him access to the keys to every trailer in the park. This distinction is consistent with our decision in this case.” Id. citing Bonnie W. v. Commonwealth, 419 Mass. 122, 125(1994).

 See Brum v. Town of Dartmouth, 428 Mass. 684, 695 (1999), and cases cited therein.

 The court need not discuss the applicability of G.L.c. 258, Sec. 10(j)(2) to these facts, as suggested by the plaintiff, since plaintiff’s claim is not barred by G.L.c. 258. Sec. 10(j).